# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

TYRONE HAMPTON,

　　　　　　Plaintiff,

　　　　v.

NAT DIAS, TIMOTHY SHERMAN,
and JOHN DOE #1,

　　　　　　Defendants.

Case No. 3:25-cv-00143-SLG

## SECOND SCREENING ORDER

On January 7, 2026, the Court screened the Complaint filed by self-represented prisoner Tyrone Hampton ("Plaintiff"), found it deficient, and accorded Plaintiff leave to file an amended complaint as to only Claim One—alleged inadequate mental health care provided to Plaintiff when he was in the custody of the Alaska Department of Corrections ("DOC").[1] On January 23, 2026, Plaintiff filed a First Amended Complaint ("FAC") and 11 pages of DOC records.[2] For relief, Plaintiff seeks $250,000 in compensatory damages, $250,000 in punitive damages, injunctive relief requiring the provision of needed mental health care,

---

[1] Docket 4. Plaintiff filed the Complaint against Superintendent Arnaldo Hernandez, but the Court accorded Plaintiff leave to "assert a claim as to the mental health care provided by each named Defendant or John Doe mental health care provider to Plaintiff when he was a pretrial detainee at DOC." Docket 4 at 11.

[2] Docket 5.

and a declaratory judgment that "prohibits mental health providers from den[y]ing medical care longer than 24 hours."[3]

## I. Screening Review of Plaintiff's claims

Plaintiff's FAC alleges that Nat Dias, Timothy Sherman, and John Doe #1 each violated his right to receive adequate mental health care by denying him psychiatric medication while he was housed at the Anchorage Correctional Center ("ACC") as a pretrial detainee in late 2024 and early 2025.[4] Because Plaintiff was a pretrial detainee at that time, Plaintiff's claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's prohibition on cruel and unusual punishment.

### A. Summary of Plaintiff's Claims

Liberally construed, Plaintiff claims that he first requested psychiatric medication on September 20, 2024, but that, despite his repeated requests, he was not seen by a psychiatrist—or other medical professional with the ability to prescribe psychiatric medications—for over six months. Attached to the FAC is a notation from Mental Health Clinician Nat Dias states that Plaintiff was "seen by mental health" on 09/21/2024, 10/02/2024, 11/01/2024, 12/11/2024, 01/05/2025, 02/12/2025, and 03/04/2025.[5] According to a memorandum from the Medical

---

[3] Docket 5 at 10.

[4] Docket 5.

[5] Docket 5-1 at 7.

Case No. 3:25-cv-00143-SLG, *Hampton v. Dias, et al.*
Second Screening Order
Page 2 of 12

Advisory Board dated April 28, 2025 attached to the FAC, Plaintiff was ultimately seen by a psychiatric provider on April 7, 2025 who prescribed psychotropic medications to Plaintiff at that time.[6]

Plaintiff alleges that on or about September 20, 2024, he submitted a Request for Interview ("RFI") seeking an appointment with mental health staff because his "thoughts were all over the place."[7] In the attached RFI on that date, Plaintiff stated he had "been off my meds for some time not due to having to defend myself in court. Please speak to me if not[h]ing el[s]e."[8]

According to Mr. Dias' note, Plaintiff was seen by a mental health staff person the next day, September 21, 2024,[9] but Plaintiff's FAC asserts that  on September 27, 2024, Defendant John Doe #1 responded to Plaintiff's RFI that Plaintiff was scheduled to be seen the following week.[10] The employee signature and date on the relevant RFI are illegible, but it appears that on either September 21 or 27, 2024, an unnamed DOC employee informed Plaintiff he was "on the schedule for next week."[11] As noted above, DOC records indicate that Plaintiff was seen by a mental health staff person on October 2, 2024.[12]

---

[6] Docket 5-1 at 1.

[7] Docket 5 at 3.

[8] Docket 5-1 at 12.

[9] Docket 5-1 at 7.

[10] Docket 5-1 at 12.

[11] Docket 5-1 at 12.

[12] Docket 5-1 at 7.

On January 20, 2025, Plaintiff submitted another RFI, specifically stating that he needed to "speak with mental health about meds" for "stress and more."[13] On January 24, 2025, Defendant Dias responded as follows: "Please complete the attached logs and we will discuss your symptoms at our next follow-up."[14] Although Mr. Dias's note indicates that Plaintiff was seen by mental health on February 12, 2025,[15] Plaintiff's FAC alleges that follow-up visit never took place.[16]

On February 26, 2025, Plaintiff submitted another RFI to be seen by mental health. He stated that he had "not seen anyone about my anxiety, mood swings, and depression" for "over 5 month[s]."[17] Defendant Dias responded on February 28, 2025 that Plaintiff was "scheduled to see mental health."[18]

On March 3, 2025, Plaintiff completed a Part One Grievance that was received by DOC on March 7, 2025.[19] In the grievance, Plaintiff stated that he had requested to be seen by someone in mental health on September 20, 2024. He stated that he was "told in a response from Mental Health that I'd be seen next week. This meeting with mental health never took place so after 120 days of being on hold I RFI medical to be seen by someone in mental health for which I was put

---

[13] Docket 5-1 at 11.

[14] Docket 5-1 at 11.

[15] Docket 5-1 at 7.

[16] Docket 1 at 4.

[17] Docket 5-1 at 10.

[18] Docket 5-1 at 10.

[19] Docket 5-1 at 9.

on a list to be seen at the next follow up. This never happen."[20] He also indicates that he has mental health records from when he was previously at Chino State prison in California.

On March 12, 2025, the Facility Standards Officer assigned Defendant Dias to investigate Plaintiff's grievance.[21] Defendant Dias responded on March 25, 2025 that Plaintiff's request for relief was partially granted; he noted that Plaintiff had been seen by mental health staff a total of seven times from September 21, 2024 to March 4, 2025. Defendant Dias stated DOC did not have records of Plaintiff's previous psychiatric treatment, but that he would send Plaintiff a release of information so DOC could obtain those records from Chino State prison. Defendant Dias also stated that Plaintiff had completed the assigned workbooks and was "scheduled to see the psychiatric provider at her earliest availability."[22]

Plaintiff filed a Grievance Appeal on April 1, 2025.[23] In his appeal, Plaintiff asserts that the mental health dates listed by Mr. Dias were not "psychiatric treatment" and "there is no reason why [he] should have to [wait] more than 6 months and counting for psychiatric treatment."[24] Plaintiff maintains that the dates listed by Defendant Dias were simply "confirmation dates" reflecting Plaintiff's

---

[20] Docket 5-1 at 9.

[21] Docket 5-1 at 8.

[22] Docket 5-1 at 7.

[23] Docket 5-1 at 4.

[24] Docket 5-1 at 4.

continued requests to be seen by a psychiatric provider for medication.[25] Plaintiff further asserts that Defendant Sherman—identified as mental health staff member "Tim" in the appeal—could only take notes and sign off on Plaintiff's workbooks.[26]

In the FAC, Plaintiff claims that he informed Defendant Sherman on November 19, 2024, December 4, 2024, January 7, 2025, and sometime in February 2025 that he was experiencing anxiety attacks, mood swings, and depression, and that he did not feel safe at ACC-West due to his alleged repeated serious food allergy attacks. Plaintiff further alleges that he informed Defendant Sherman that he needed psychiatric medication, but Defendant Sherman "made intentional decisions regarding the denial of Plaintiff needed medical care" that "caused Plaintiff to suffer for 191 days."[27]

According to a memorandum issued by the Medical Advisory Committee ("MAC") dated April 28, 2025, on April 7, 2025, Plaintiff was seen by a psychiatric provider who prescribed psychotropic medications to Plaintiff on that date.[28]

## II. The FAC fails to state a plausible claim

At the screening stage, a court's review is generally limited to the allegations in the operative complaint.[29] However, a court may also consider documents

---

[25] Docket 5-1 at 4.

[26] Docket 5-1 at 4.

[27] Docket 5 at 5.

[28] Docket 5-1 at 2.

[29] *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir. 1996).

attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.[30] A plaintiff may "plead himself out of court" by alleging facts or attaching documents that affirmatively defeat his claim.[31] Upon review, the FAC does not contain sufficient facts that, accepted as true, demonstrate that any Defendant was deliberately indifferent to Plaintiff's mental health needs—that is, that a Defendant knew Plaintiff needed psychotropic medication but intentionally delayed in making it available to him.

The records attached to Plaintiff's FAC demonstrate that Plaintiff did make repeated attempts to be seen by a mental health provider. And indeed, Plaintiff acknowledges that he was seen by mental health staff beginning in the fall of 2024. Plaintiff did not specifically request medication in the first RFI he filed in September 2024. When he specifically requested psychiatric medication in his RFI dated January 20, 2025, Defendant Dias promptly responded that Plaintiff needed to complete logs to be discussed at his next visit. By late March 2025, Plaintiff had completed the workbooks.[32] Less than three months after he specifically requested psychiatric medication, Plaintiff was prescribed that medication on April 7, 2025.

---

[30] *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). *See also Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (in determining whether the complaint states a claim for relief, a court "may consider facts contained in documents attached to the complaint").

[31] *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir.1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

[32] *See* Docket 5-1 at 7.

A delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.[33] Plaintiff alleges that DOC mental health staff intentionally delayed providing Plaintiff with needed psychiatric medication. But the FAC does not allege specific facts demonstrating that from September 2024 through April 7, 2025, each Defendant made an intentional decision regarding the denial of needed medical care; that each Defendant's denial of the needed medical care put Plaintiff at substantial risk of suffering serious harm; that each Defendant did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable mental health care worker under the circumstances would have understood the high degree of risk involved—making the consequences of each Defendant's conduct obvious; or by not taking such measures the defendant caused the plaintiff's injuries.[34] A plaintiff must show that each defendant's actions were "objectively unreasonable," which requires a showing of "more than negligence but less than subjective intent—something akin to reckless disregard."[35]

---

[33] *See Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985) (requiring that any treatment delays cause harm).

[34] *See* Docket 4 at 6.

[35] *Sandoval v. Cnty. of San Diego,* 985 F.3d 657, 669 (9th Cir. 2021). *See also Alexande v. Nguyen,* 78 F.4th 1140, 1145 (9th Cir. 2023) (stating that the "mere lack of due care by a state official is not enough to show a constitutional violation" under the Fourteenth Amendment) (quoting *Gordon*, 888 F.3d at 1125)).

Case No. 3:25-cv-00143-SLG, *Hampton v. Dias, et al.*
Second Screening Order
Page 8 of 12
Case 3:25-cv-00143-SLG     Document 6     Filed 04/21/26     Page 8 of 12

Plaintiff characterizes each Defendant's response as an intentional denial of needed psychiatric medication,[36] but the FAC does not allege facts showing that any of these named Defendants were responsible for scheduling Plaintiff to be seen by a qualified psychiatric provider, had the authority to prescribe or renew psychiatric medication, or intentionally caused Plaintiff to go without necessary medication. Accordingly, Plaintiff has not alleged sufficient facts to establish an affirmative link between each Defendant's conduct and the alleged constitutional deprivation.

For these reasons, the FAC fails to state a plausible claim for deliberate indifference against any Defendant. Although amendment may well be futile, the FAC is DISMISSED with leave to file a Second Amended Complaint to attempt to correct the deficiencies identified in this order.

### III. Filing an amended complaint

An amended complaint replaces the prior complaint in its entirety.[37] When an amended complaint is filed, the Court treats any previous complaint(s) as non-existent,[38] so a plaintiff must not incorporate by reference any prior pleading, including exhibits.[39] Although Plaintiff is being given an opportunity to file a Second Amended Complaint, he must not expand the scope of the case by alleging new

---

[36] Docket 5 at 3-5.

[37] *See* Fed. R. Civ. P. 15; District of Alaska Local Civil Rule 15.1.

[38] *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (en banc).

[39] District of Alaska Local Civil Rule 15.1.

Case No. 3:25-cv-00143-SLG, *Hampton v. Dias, et al.*
Second Screening Order
Page 9 of 12
Case 3:25-cv-00143-SLG     Document 6     Filed 04/21/26     Page 9 of 12

unrelated parties or claims.

Plaintiff may attach DOC records or other documents to support his allegations, but all necessary allegations must be included in the amended complaint itself, and he should specifically identify in the amended complaint the page number of the document that supports each of his contentions.

If Plaintiff does not file either a Second Amended Complaint or Notice of Voluntary Dismissal on the Court's form within 60 days of the date of this order, this case shall be dismissed under 28 U.S.C. § 1915(e)(2)(B) without further notice to Plaintiff for failure to state a claim. If an amended complaint is dismissed as frivolous, malicious, or for failure to state a claim, and the case is closed, it will count as a strike against Plaintiff. A Notice of Voluntary Dismissal does not count as a strike.[40]

### IV. The Three Strikes Rule

The Prison Litigation Reform Act requires that a self-represented prisoner receive a "strike" when a case he has filed in federal court is dismissed "as frivolous or malicious or fails to state a claim upon which relief may be granted[.]"[41] The "three strikes" provision was "designed to filter out the bad claims and facilitate consideration of the good."[42] When a prisoner-plaintiff has accumulated three

---

[40] *Spencer v. Barajas*, 140 F.4th 1061 (9th Cir. 2025).

[41] 28 U.S.C. § 1915(g).

[42] *Jones v. Bock,* 549 U.S. 199, 204 (2007).

Case No. 3:25-cv-00143-SLG, *Hampton v. Dias, et al.*
Second Screening Order
Page 10 of 12
Case 3:25-cv-00143-SLG     Document 6     Filed 04/21/26     Page 10 of 12

strikes, he is prohibited from bringing any other civil rights cases in federal court without prepaying the full filing fee unless he makes "plausible allegations" that, at the time he filed the complaint, "the prisoner is under imminent danger of serious physical injury."[43] Imminent danger requires an allegation that a harm is "ready to take place" or "hanging threateningly over one's head."[44] It cannot be triggered solely by complaints of past injury or generalized fears of possible future harm.[45] In addition to being "imminent," the alleged danger must also be "both fairly traceable to unlawful conduct alleged in [the] complaint and redressable by the court."[46]

**IT IS THEREFORE ORDERED:**

1. Plaintiff's First Amended Complaint at **Docket 5 is DISMISSED** with leave to file a Second Amended Complaint.

2. If Plaintiff does not file either a Second Amended Complaint or Notice of Voluntary Dismissal **within 60 days** from the date of this order, this case shall be dismissed as a "strike" without further notice to Plaintiff.

---

[43] 28 U.S.C. § 1915(g); *see also Andrews v. Cervantes,* 493 F.3d 1047, 1055 (9th Cir. 2007).

[44] *Andrews,* 493 F.3d at 1056 (cleaned up).

[45] *Id.* at 1053 ("The exception's use of the present tense, combined with its concern only with the initial act of 'bring[ing]' the lawsuit, indicates to us that the exception applies if the danger existed at the time the prisoner filed the complaint.").

[46] *Ray v. Lara,* 31 F.4th 692, 701 (9th Cir. 2022) (adopting nexus test).

3.    With this order, the Clerk is directed to send: (1) form PS01, with "SECOND AMENDED" written above the title "Prisoner's Complaint Under the Civil Rights Act 42 U.S.C. § 1983"; (2) form PS09, Notice of Voluntary Dismissal; and (3) one copy of the Court's Screening Order at Docket 4.

DATED this 21st day of April, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
SHARON L. GLEASON
UNITED STATES DISTRICT JUDGE

Case No. 3:25-cv-00143-SLG, *Hampton v. Dias, et al.*
Second Screening Order
Page 12 of 12
Case 3:25-cv-00143-SLG    Document 6    Filed 04/21/26    Page 12 of 12